Nelson, J.,
delivered the opinion of the Court.
Neely brought this action of debt against Coffee, in the Circuit Court of Overton county, upon a judgment for fifteen hundred dollars, recovered against defendant in the Circuit Court of Cumberland county, State of Kentucky, at "the October Term thereof, 1865, and here to the Court shown. The defendant pleaded mil tiel record; fraud in obtaining the judgment; no jurisdiction in the Circuit Court of Cumberland county of the subject matter of the suit; no jurisdiction in said Court of defendant’s person *306 and set-off. Issue was taken upon the plea of nul tiel record, and special demurrers filed to the other four pleas. The demurrers were sustained as to the second, third and fourth pleas, but overruled as to the fifth; and thereupon a replication was filed, and issue taken upon the fifth plea, and the case was submitted to the jury on the issues joined upon the plea, which improperly concluded to the country, and upon the plea of nul tiel record, and set-off. The jury found the issue in favor of the plaintiff, and judgment was rendered against the defendant, Coffee, for $1,418.74, and costs, from which he prosecutes this appeal.
The record does not show, with certainty, what disposition was made of the plea of nul tiel record. It should have been tried by the Court, but no direct action appears to have been taken upon it, except to grant leave to file a replication thereto. The issue seems to have been submitted to the jury, and this was error. See 2 Yer., 258; 2 Swan, 555.
On the trial in the Court below, the plaintiff read in evidence a paper, styled “A transcript of record from the Circuit Court of Cumberland,” to the reading of which defendant excepted, because, as he alleges, it was not, for various reasons, properly authenticated. The certificates upon said paper are as follows:
“State of Kentucky, i “Clerk’s Office Cumberland Circuit Court. /
“ I, C. P. Gray, Clerk of the Cumberland Circuit Court, certify that the foregoing six pages and nine lines contain a true and perfect transcript of the petition, notes, summons, Sheriff’s return thereon, judgment and fi. fa. *307 that issued thereon, with Sheriff’s return thereon, as the same remains now on file and of record in my office.
r — A—, f ICy. Seal 1 1 0court°' f v — v"—'
In testimony whereof, I have hereunto set an<^ affixed my seal of office, at office in Burksville, 11th day of Jauuary, 1866.
“G. P. Geay, Clerk.”
“State oe KeNtucky, i ‘‘Cumberland Circuit Court.j
“I, T. L. Alexander, Judge of the 15th Judicial District, in the State of Kentucky, and presiding Judge of the Cumberland Circuit Court, do certify that C. P. Gray, whose genuine signature appears to the foregoing certificate as Clerk, is now, and was at the time of signing the same, Clerk of the Cumberland Circuit Court, duly qualified according to law; that his certificate is in due form of law, and all his official acts as such are entitled to full faith and credit. In witness whereof, I have hereunto set my hand as Judge aforesaid. This, the 11th day of January, 1866. T. L. ALEXANDER, J. C. C.”
It is contended for the plaintiff in error, that the Clerk’s certificate is not sufficient, because, it is said, he does not purport to certify the copy of a record, but only copies of certain papers in a cause; and it is further alleged that the record is not certified under the official seal of the Court, and that the Judge does not certify that there is no public seal of office in his- court. Neither of these positions is correct.
1. The act of Congress of May 26,. 1790,'prescribing the mode of authenticating legislative acts and judicial records and proceedings, does not, in express terms, re *308 quire tbe Clerk to certify that the transcript is a copy of the record. The phrase, “judicial records and proceedings,” was intended to embrace the summons, declaration or petition, and other proceedings in a cause, as well as the actual proceedings in open court, entered upon the minutes or record book, all of which constitute, in law, the record of a cause; and the language employed by the Clerk in his certificate, that the paper is a true and perfect transcript of the petition, notes, summons, etc., as the same remain now on file and of record in my office, was appropriately used to convey the idea that he not only transcribed what appeared upon the minutes, but all the papers filed in and properly belonging to the cause; and it could not be as he certifies it is, a true and perfect transcript, unless it embraced every paper properly filed, and every entry made of record in the cause.
In Peck v. Gale, 3 Mil. La. R., 320, 323 and 324, it was held that a certificate of the Clerk that the transcript contains the proceedings on file and of record, is presumptive evidence that it contains the whole proceedings; and, therefore, a transcript, thus authenticated, may be read. See 3 Cow. & Hill’s Phil, on Ev., 2d ed., 1059. In Pennsylvania, a certificate from the prothonotary,' annexed to the exemplification of a record, that the paper is truly copied from the records, imports that it is a copy of the whole, and not a mere extract; and that- the words, “a true copy,” import an entire copy. Edmiston v. Scharwtz, 13 Serg. & Rawle, 135; 3 Cow. & Hill’s Phil., 1059, 60. These cases are almost identical in principle with this, and are not in conflict with Burton v. Pettibone, 5 Yer., 443. There it-was held, that “to certify *309 tbat the papers were copied from the record on file, is not certifying that the'same is a full and perfect transcript of the proceedings in a cause.” But here the Clerk enumerates all the papers usually constituting a record, and certifies that it is a true and perfect transcript, and the Judge certifies that his certificate is in due form of law.
2. It seems to be generally agreed that the method of authentication prescribed by the .act of Congress is not exclusive of any other which the States may see proper to adopt. See 1 Greenl. Ev., 2d ed., 505, and the eases cited in note to 1 Bright. Dig., .265. Several of the States have legislated upon the subject. 3 Cow. & Hill’s Phil. Ev., 2d ed., 1060. Among others, the Code oí Tennessee, 3795, contains a provision as to the mode oí authentication. The act of Congress provides that the authentication shall be by “the attestation of the Clerk and the seal of the Court, if 'tlíére be a seal,” etc.; and the objection here is, that the Clerk does not purport to affix the seal of the Court, but only his seal of office. Admitting Jhat there may be a distinction between the seal of the Court and the seal of the Clerk, as a mere officer of the Court, and that there is some plausibility in the argument that the Clerk does not, in the exact language of the act of Congress, purport to affix the seal of the Court eo nomine, we hold that the. provision in the Code, 3795, contains a literal answer to the objection, and embraces precisely such certificates as those now under consideration. The words of that section are, that: “A judicial record of 'a sister State, or of any of the Federal Courts of the United States, may be proved by, a copy thereof, attested *310 by the Clerk, under his seal of office, if he have one, together with a certificate of a Judge, Chief Justice, or presiding magistrate, that the attestation is in due form.”
The objection, therefore, stated in the bill of exceptions, that the Judge does not certify that there is no public seal of office in his court, if it were tenable under the act of Congress, is expressly obviated by the provision in the Code as to the Clerk's seal of office; and, according to Foster v. Taylor, 1 Cooper’s Overt., 568, foot; 2 Tenn., 191, it is immaterial to which certificate the seal stands in juxtaposition; the Court will consider it as annexed to the proper certificate.
3. It is next insisted that the Circuit Court erred in sustaining the demurrers to the pleas which sought to put in issue the jurisdiction of the Circuit Court of'Cumberland county, Kentucky, both as to the subject matter in litigation, and the person of the plaintiff in error.
In Story’s Confi., § 609, the author, in treating of the constitutional provision, that “full faith and credit shall be given in each State, to the public acts, records and judicial proceedings of every other State,” declares that this doe^ not prevent an inquiry into the jurisdiction of the court in which the original judgment was rendered, to pronounce the judgment; nor an inquiry into the right of the State to exercise authority over the parties or the subject matter; nor an inquiry whether the judgment was founded in, and impeachable for, a manifest fraud. And Chancellor Kent, in a note to his Commentaries, vol. 1, p. 261, m., 6th ed., cites a large number of authorities to establish the positions pervading, as he says, the jurisprudence of this and all other coun *311 tries, not only that the court of the State in which the judgment was rendered must have.had jurisdiction of the subject matter, but that the defendant must have had due notice to appear; or, if a foreigner or non-resident, must have actually appeared to the suit, “or the judgment of another State will not be deemed of any validity.” Without ■ any further citation of authorities, let it suffice to observe that, holding, as we do, that the transcript of record was properly admitted in evidence, we see, upon looking into it, that the judgment in Kentucky was in a proceeding by petition and summons, the petition claiming sums due upon notes or bills single; and under the Code of Tennessee, 3800, 3801, and Stanton’s Kentucky Code of Prac., 26, § 18, we take judicial cognizance of the fact that the Circuit Court of Cumberland County was a court of general jurisdiction, with authority to determine the subject matter; and that it appears from the return of the Sheriff of Cumberland county, that he executed the summons on the 4th of October, 1865. The action by petition and summons is authorized by the Kentucky Code of Practice, p. 46, § 65. The return, “executed,” was sufficient under section 75 of the Code, as expounded by the. Court of Appeals in Davige v. Colson, cited in the Kentucky Code of Practice, p. 48, note d. That Code is. to be received as evidence in the courts and tribunals of Kentucky, by the act of 15th February, 1860, contained in Myers’ Supplement to the Revised Statutes.of Kentucky, p. 203, ed. of 1866.
The judicial knowledge thus taken of the laws of Kentucky is not only in conformity to our own Code, *312 but in accordance with the true spirit and meaning of the act of Congress, as expounded in 3 Am. Lead. Ca., 727, 728; and the rule as to judicial notice of the laws of the respective States, laid down in Greenl. Ev., § 490. As questions of law and fact, therefore, it is manifest from the record that the Circuit Court in Kentucky had plenary jurisdiction and authority to render the judgment; and although the court below may have erred technically in sustaining the demurrers, the record shows that this was not an error affecting the merits; and thus viewing the case, we are expressly precluded by the provisions in the Code, 4516, from reversing the judgment. The record itself shows that the pleas can not be supported. Profert was made of the proceedings; and the jurisdiction is therein fully shown, as well as in the evidence.
4. The next question submitted in behalf of the plaintiff in error is by no means free of difficulty. In his second plea, it is alleged, in substance, that owing to a great political prejudice existing at the time of the service of the summons, between citizens of Kentucky and Tennessee, the plaintiff in error could not attend to the defense of the suit there, without endangering his life; that the defendant in error, well knowing this fact, took advantage of the temporary sojourn of the plaintiff in error in the State of Kentucky to cause, process to be served; and that he “fraudulently combined with the citizens of Kentucky, by force and threats, to keep him from 'making his defense, and took judgment against him by default, well knowing that defendant did not owe him one cent;” and that he owed the defendant in *313 stead of the defendant being indebted to him. It is insisted for the plaintiff in error, that the Circuit Court erred in sustaining the demurrer to this plea; and we hold, upon reason and the weight of authority, that this position is well taken.
In Topp v. Bank of Alabama, 2 Swan, 184, it was held that judgment rendered in- one State, in pursuance of the laws of that State, -is to be regarded as absolutely binding upon the parties thereto, in every other State, until it is either set aside by the tribunal rendering it, or reversed upon error.” But the question of fraud was not considered in that case; and the broad .principle thus announced is limited and restricted by the facts appearing in the case in judgment. For, in that case, it was held that when two judgments for the same debt had been recovered under the local laws of the State of Alabama, the one ágainst the maker, and the other against the indorser of a promissory note, and the judgment against the indorser was paid by him, such payment extinguished both judgments; and an action could not be maintained in this State upon the judgment recovered against the principal, although it had been assigned to the indorser.
It has been seen in the passage above quoted from Story’s Conflict of Laws, that the judgment is not of such absolute perfection or inviolability as to preclude an inquiry in the Court of the State in which suit is brought upon it, as to whether it is founded in and impeachable for a manifest fraud. It is said in 1 Greenl. Ev., 2d ed., § 541, that the proceedings in rem, of foreign Courts of Admiralty, are generally conclusive; but it is added, *314 that “this is always to be understood with, this limitation, that the judgment has been obtained, bona fide and without fraud; for, if fraud has intervened, it will doubtless avoid the force and validity of the sentence.” To the same effect it is correctly stated in 2 Kent’s Com., 109, m., 6th ed., “that there is no doubt of the rule that the allegation that a foreign judgment was obtained by fraud, is admissible; and if true, it will destroy its effect.” And it has been held that, “in an action on the judgment of a court of another State, the defendant may show that it was obtained by fraud, or that the court had no jurisdiction:” Warren Manuf. Co. v. Etna Ins. Co., 2 Penn., 502; Lincoln v. Tower, 2 McL., 473; Westeweth v. Lewis, lb., 511. See, also, 2 Kent’s Com., 6th ed., 120, note a.
We are aware that, a contrary doctrine has been held in some of the States. See 2 Am. Lead. Ca., 3d ed., 737. But such a view of the law gives to the judgment an extra-territorial operation which it does not possess in the State where rendered, was not contemplated by the Act of Congress, and is not generally conceded by the States. In an early case in this State, it was said: “There can be no doubt that the judgment of another State can be examined here whenever the party in whose name it was obtained, applies to our courts to have it effectuated. The courts here can not act blindfolded, nor was it ever intended by the Act of Congress that they should:” Coop. Overt. Tenn. B., 212. In the same case, it was said that “it has been determined by our courts that a judgment of another of the United States is not to be considered in the same view as the *315 judgments of a foreign country, and that the plea of nil debet will not lie, as it would .t.o a .foreign judgment, agreeably to the English authorities. Hence, it results that our courts seem disposed to consider the judgment of another State in the same point- of view with a judgment of our own, under similar circumstances.” In that case, a judgment obtained in North Carolina was enjoined; but upon what ground does not appear from the report. Subsequently, a bill was entertained to impeach a decree in equity, pronounced by one of the Circuit Courts of North Carolina, upon the sole ground that complainant and his counsel were absent when the account was taken,
and had no notice as to the taking of the account. Glasgow v. Lowther, Cooke, Cooper’s ed., 351. In Wincheser v. Evans, Ib., 320, it was held, upon demurrer to a plea in bar of the bill, that “the record of a judgment in another State is conclusive evidence that such judgment was rendered, but a court of equity in this State is not thereby preceded from inquiring into the grounds upon which it was rendered, and granting relief in a proper case, upon the merits.” Afterwards, when the cause came to be finally heard, it was held, among other things, in a learned opinion, delivered by Alfred Harris, Special Judge, “that equity will relieve against a judgment rendered in a sister State, upon any ground which' would entitle a party to relief against a judgment in this State: 3 Hay, Coop, ed., 211. It is also a well-established doctrine in this State, that, when the judgment of a sister State is void for •want of jurisdiction in the court rendering it, or is rendered upon an attachment of property without personal service of process, or appearance, no action can be sus *316 tained upon it in this State: Moran v. Killibrew, 2 Yer., 376; Earthman v. Jones, lb., 484. Without citing cases from our own courts, in which other questions relating to the remedies upon records from other States have been determined, we hold, upon the authority of numerous cases cited in 3 Cow. and Hill’s Phil, on Ev., 2nd ed., 897, that, the general proposition there stated is correct, as follows: “That the judgment of one of the State Courts is of the same dignity in every other State as in the one where it was pronounced; and hence, if in the courts of the State where it was pronounced, it is conclusive in its operation as evidence, or otherwise, it must be equally so and to the same extent in all courts throughout the Union.”
No doubt, as we apprehend, can exist, that if it were clearly shown in the proper court of any State where a judgment has been rendered, that it was obtained by fraud, it would be set aside; and where an action is brought upon it, it can have no more force or effect in the State where the suit is brought than in the State where the judgment was rendered. As we understand the decisions of the Court of Appeals of Kentucky, judgments and decrees obtained by fraud would be set aside by the legal tribunals of that State; and the judgment in the case before us is of no greater validity here than it would be in the State where it was rendered. See Talbot v. Todd, 5 Dana, 196; Thomas and Wife v. Hite, 5 B. Monroe, 598; Kennaird v. Adams, 11 Ib., 219. It has been declared in this State, that “the judgments of courts of record are of such high verity, that their existence can not be impeached by parol proof; they *317 may be vacated or set aside, if they have been obtained by fraud, inevitable accident or surprise.”' Bank v. Patterson, 8 Hum., 368, 369; Williams v. Tenpenny, 11 Hum., 179.
The more usual, and certainly the better, practice in this State, is to resort to a court of equity to obtain relief against a fraudulent judgment. The Code does not, in express terms, provide for any action -on a judgment from another State, but divides the two classes of actions into' actions upon contracts and for wrongs. 2746, 2747. It is declared, in sec. 2884, par. 2, that any pleading shall be sufficient, “when, by a fair and natural construction, it shows a substantial cause of action or defense.” At common law, “a defendant .could not plead that the judgment had been obtained against him by fraud, though it might be pleaded that a judgment against a third person was so obtained.” 1 Chit. PL, 486, n. But in England, as well as in several of the United -States, “it has been customary to grant new trials, where judgments are obtained through fraud or trick.” 3 Graham & Wat. on New Trials, 1008, 1015.
We' are unable to perceive any valid reason why the defense may not be made by plea, in a court of law, to an action upon a judgment from another State, especially under the provisions of the Code; and the judgment of the court below was erroneous, in sustaining the demurrer to the plea of fraud.
4. On a careful examination of the record, we are not satisfied as to the correctness of the verdict of the jury on the plea of set off. The evidence tends strongly to show that the defendant in error is' liable for the value *318 of, one, at least, of tlie negroes referred to in the plea, whom he took in pledge and claimed as his own, before the general emancipation; but, as the entire cause will undergo a re-investigation, no decision is here made on that question.
Let the judgment be reversed, and the cause remanded for a new trial.